## VETAL F. AINS vs. EDWARD D. HAYES.

Third Judicial District, New Haven, June Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

A landlord agreed that if through his sale of the premises his tenant "was compelled to vacate," he should receive $50 and his moving expenses up to $14. A year later the house was sold, and the purchaser, after installing gas, raised the rent from $14 to $25 a month, which the tenant could not afford to pay and so hired another

Ains *v.* Hayes.

house. *Held* that in the absence of any finding that the increase in the rent was arbitrary or unreasonable, the tenant could not be said to have been "compelled" to leave the premises because of their sale, and therefore could not recover the $50 and his moving expenses.

Submitted on briefs June 5th—decided August 2d, 1917.

ACTION to recover money alleged to be due under a contract between the parties, brought to the City Court of Bridgeport and thence by the defendant's appeal to the Court of Common Pleas in Fairfield County and tried to the court, *Walsh, J.;* facts found and judgment rendered for the plaintiff for $62 and double costs, and appeal by the defendant. *Error; judgment to be rendered for defendant.*

This action is for damages for compelling the plaintiff to move, occasioned, as alleged, by the sale of a house formerly owned by the defendant. A memorandum of agreement relating to this transaction was as follows: "Bridgeport, Conn., August 15, 1914.

I hereby agree if Mr. Ains is compelled to vacate my cottage on Ezra Street through my selling said cottage he is to receive the sum of Fifty (50) dollars and moving expenses, which are not to exceed the sum of $14.

Edward D. Hayes."

The controlling question in issue was whether or not the plaintiff was "compelled," within the terms of the contract, to move through the defendant's selling the cottage.

The finding shows the following facts: The defendant was the owner of a house consisting of five rooms and a bathroom, but with no water. This building was situated on the corner of Ezra Street and Fairfield Avenue in Bridgeport, Connecticut. Ezra Street was a new street and Fairfield Avenue had just been laid out through a newly opened tract of land in the northern part of the city. The place is now a residential neigh-

borhood, and this house was the first one erected on this tract. The cottage was lacking in modern improvements, and consisted of a small five-room house upon a city lot. Prior to July 15th, 1915, the wife of the plaintiff called at the house of the defendant and inquired if he had any rents. The defendant stated that he had a house, which was not complete, as the water and gas had not been connected, but that water could be drawn from a spring, a few hundred feet away, until the city water-supply was connected, which would be in a few months. The defendant showed the plaintiff the building and offered to rent the same for $14 per month, to commence on August 1st, 1915. The plaintiff was willing to take the house on these terms, provided the defendant would give him assurance that he would not sell it to anybody who would compel the defendant to vacate the premises. The defendant acceded to this, and on August 15th, 1915, executed the writing hereinbefore set forth. The defendant received no new consideration for this writing. The plaintiff occupied these premises and paid the rent therefor until October 1st, 1916. On July 15th, 1916, the defendant sold this house to one Koehler, who knew about this agreement between the plaintiff and the defendant. Koehler installed gas in the house between July 15th and September 9th, 1916, and then notified the plaintiff that beginning October 1st, 1916, the rent for the house would be $25 a month. This sum was more than the plaintiff could afford to pay for houserent, and was entirely beyond his means, and in consequence of the increase of rent the plaintiff was obliged, on October 1st, 1916, to find another rent. The cost of the plaintiff's moving was $7.50.

The court rendered judgment for the plaintiff to recover the sum of $50 and $7.50, his expense of moving, with interest thereon, and with double costs.

*John A. Cornell, Spotswood D. Bowers* and *Charles E. Williamson,* for the appellant (defendant).

*Henry E. Shannon* and *Frank L. Wilder,* for the appellee (plaintiff).

RORABACK, J. Nothing is disclosed in the finding of facts which shows that the plaintiff was subjected to such a degree of compulsion as to warrant the rendition of a judgment in his favor. The contract states that it was agreed that if the plaintiff was compelled to vacate the defendant's premises because of the sale of them, he was to receive the sum of $50 and moving expenses.

The word "compelled" may in some cases refer to compulsion exercised through the process of the courts, or through laws acting directly upon the parties. Such certainly is not the present case. The word "compelled," in its ordinary sense, means: to drive or urge with force; to constrain; oblige; necessitate, whether by physical or moral force. Webster's International Dictionary.

As applied to the agreement of Mr. Hayes, the meaning of the language, "if Mr. Ains is compelled to vacate my cottage on Ezra Street through my selling said cottage," is this: Mr. Ains may be compelled to leave through the terms of the sale by which the purchaser is to take immediate possession; or Mr. Ains may be compelled to leave by the action of the purchaser immediately upon his purchase notifying him to leave; or Mr. Ains may be compelled to leave by the action of the purchaser in immediately upon his purchase making it unreasonable to expect him to continue in possession, as, for example, by raising the rent to a prohibitive rental.

The record is also barren of facts which *aliunde* tend

to sustain the plaintiff's claim that he was compelled to vacate these premises because they had been sold. It does not here appear that either the defendant, or the party purchasing his property, did anything which the law condemns. There was no actual or threatened exercise of power possessed, or supposed to be possessed, over the plaintiff's person, or over the property which he occupied. It is not even claimed that the plaintiff was ever notified or requested to surrender possession of the property which had been leased to him by the defendant. There is nothing to suggest that this increase in the rental was arbitrary or unreasonable. Upon the other hand, it is fair to infer, from the facts found, that the owner of the property might have been justified in making an alteration in the charge for the use of his premises. The property had been improved, and the facts were not the same when the plaintiff vacated these premises as when he leased them. The only compulsion shown came from the plaintiff's inability to pay the rental of the property. This fact cannot be resorted to for the purpose of fastening liability upon the defendant.

There is error, the judgment for the plaintiff is set aside, and the cause remanded for the rendition of judgment in favor of the defendant.

In this opinion the other judges concurred.